UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
BRUCE HILDEBRANDT,
        Plaintiff

v.                                    CIVIL ACTION
                                      NO.: 04-10462WGY
NORTH STAR FISHERIES, INC.,
        Defendant
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR AN ORDER REQUIRING THE DEFENDANT TO FULFILL ITS OBLIGATIONS UNDER THE GENERAL MARITIME LAW**

    Now comes the plaintiff in the above-entitled matter and respectfully requests that this Honorable Court enter an emergency order that the defendant North Star Fisheries, Inc., pay, forthwith, all outstanding medical bills under its cure obligations, and pay the plaintiff those sums presently due him in maintenance. In further support thereof, the plaintiff respectfully refers this Honorable Court to the following:

I.   **FACTS**

    On August 29, 2003, the plaintiff was a member of the crew of the F/V NORTH STAR. On the date in question, at approximately 7:30 a.m., the F/V NORTH STAR capsized and sank. In the course of this event, the plaintiff injured his right shoulder. Specifically, the treating physician, Dr. Mark Gilligan, has diagnosed a right shoulder rotator cuff and laberal tear. The plaintiff has been unable to return to his work as a commercial fisherman since the date of the accident. Notwithstanding the obvious proposition that Mr. Hildebrandt was injured while in the service of the vessel, the defendant has been recalcitrant in fulfilling its maintenance and cure obligations.

    Prior to the appearance of counsel in November of 2003, and notwithstanding the fact that the accident occurred on August 29, 2003, no maintenance or cure was paid to the plaintiff. To be fair, up until that time, it is unclear how

much information, if any, Hildebrandt provided to the vessel or its insurer. However, since that time, the plaintiff has provided the insurer, through its representative, David DuBois, all medical records in his possession. Dr. Gilligan has recommended a conservative approach to the injury for the time being, opining that physical therapy would be the appropriate approach. Plaintiff's counsel attempted to have Mr. DuBois contact the plaintiff's choice for a physical therapy treatment, Healthsouth Rehabilitation Center, in order to give approval for such services. Voice mail messages, and letters, went ignored. Mr. Hildebrandt has had to sign a document indicating personal responsibility for these treatments, in order to obtain the treatment he requires. Generally, the plaintiff's ongoing efforts to obtain maintenance and cure benefits for Hildebrandt are well documented, (see letter of November 4, 2003, from Orlando & Associates to DuBois, requesting maintenance, hereto attached as Exhibit "A"; see letter of November 11, 2003, from Orlando & Associates to DuBois, enclosing medical records and requesting maintenance and cure, hereto attached as Exhibit "B"; see letter of November 21, 2003, from Orlando & Associates to DuBois, requesting payment of cure obligations, hereto attached as Exhibit "C"; see letter of December 30, 2003, from Orlando & Associates to DuBois, forwarding additional medical records and requesting payment of updated maintenance, hereto attached as Exhibit "D"; see letter of January 8, 2004, from Orlando & Associates to DuBois, requesting approval for physical therapy, hereto attached as Exhibit "E"; see letter of January 13, 2004, from Orlando & Associates to DuBois, again requesting approval of physical therapy treatments at Healthsouth, hereto attached as Exhibit "F"; see letter of January 16, 2004, from Orlando & Associates to DuBois, requesting approval for physical therapy treatments, requesting that maintenance and cure be brought up to date, and indicating that suit would be commenced if the

letters, and requests, from plaintiff's counsel to the insurer, that the injured seaman be paid his monthly maintenance. Each month that no payments were made, involved daily phone calls between plaintiff's counsel and his client attempting to explain why the insurer was not paying maintenance, notwithstanding the fact that there is no debate that he was injured in the service of the vessel, and that he had not reached maximum medical improvement. To this day, in addition to the issue of the insurer's failure to pay maintenance benefits in a regular routine manner, the plaintiff still has no idea whether the defendant has lived up to its obligation with respect to the payment of the outstanding medical bills, many of which dated back to the date of the accident. Notwithstanding requests that it do so, the insurer has never provided verification that these bills have been paid. There is no dispute that, with the assistance of the law firm of Regan & Kiely, progress has been made. Specifically, at least the surgery was paid for. Nevertheless, the plaintiff should not be required to jump through hoops every month to have his maintenance made, and to assure that his medical bills have been satisfied.

    The law of maintenance and cure has been around since very early times, and, in this country, since 1823. *See* SCHOENBAUM, ADMIRALTY AND MARITIME LAW, §4-28 at 289 (2nd ed. 1994); *see also Harden v. Gordon*, 11 F.Cas. 480 (C.C.D.Me.1823). According to this law, a shipowner is responsible for paying maintenance and cure following any injury or illness incurred by a seaman while in the shipowner's employ. *See Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527-28, 58 S.Ct. 651, 652-653, 82 L.Ed. 993 (1938). The cause of the injury or illness is irrelevant. *See Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87, L.Ed. 1107 (1943). "The doctrine `derives from the `unique hazards [which] attend the work of seamen,' and fosters the combined object of encouraging marine commerce and assuring

6

the well-being of seamen.'" *Sullivan v. Tropical Tuna, Inc.*, 963 F.Supp. 42 (1997) (quoting *Vella v. Ford Motor Co.*, 421 U.S. 1, 3-4, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975). Any ambiguities or doubts concerning the seaman's entitlement to maintenance and cure "are to be resolved in favor of the seaman." *Sullivan* at 45 citing *Vaughan v. Atkinson*, 369 U.S. 527, 532 82 S.Ct. 997, 1000-01, 8 L.Ed.2d 88 (1962). "[I]t is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure...." *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1980).

"Cure" consists of payments for all aspects of the seaman's medical care until he reaches maximum medical cure. See *Calmar, Supra*, 303 U.S. at 528, 58 S.Ct. at 653. "Maximum medical cure" is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further. See *Vella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975).

> "'The shipowner's obligation to furnish maintenance is coextensive in time with his duty to furnish cure ... and neither obligation is discharged <u>until the earliest time when it is reasonably and in good faith determined by those charged with the seaman's care and treatment that the maximum cure reasonably possible has been effected</u>.'" *Vella v. Ford Motor Co.*, 421 U.S. 1, 6, n.5, 95 S.Ct. 1381, 1384, n.5, 43 L.Ed.2d 682 (1975) [emphasis in original] citing *Vitco v. Joncich*, 130 F.Supp. 945, 949 (Sd.Cal. 1955), aff'd, 234 F.2d 161 (Ca.9 1956). See *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1980); see also SCHOENBAUM, ADMIRALTY AND MARITIME LAW, §4-28 (2nd ed. 1994) citing *Gillikin v. U.S.*, 764 F.Supp. 261 (1991).

It is clear from the information presented above, that the

defendant has, at every turn, avoided its maintenance and cure obligations. The conduct of the insurer has forced plaintiff's counsel to write a multitude of letters, leave several voice mail messages, and undertake all steps, short of filing suit, to simply have the plaintiff taken care of. Moreover, this has provided a very frustrating and difficult treatment course for Mr. Hildebrandt, who has struggled with the providers who have not been paid. Moreover, without the small amount of daily maintenance to which he is entitled, his financial situation is perilous. Nor is there any suggestion, in any of the medical records, that the plaintiff has reached maximum medical improvement, such that these obligations have ceased. In short, the defendant has failed to meet its obligations under the General Maritime Law to pay maintenance and cure and this Court should order it, immediately, to make such payments, and to stay current on its maintenance obligations until such time as the seaman has reached maximum medical cure.

B. Attorneys Fees, Costs and Punitive Damages

The First Circuit has upheld the validity of punitive damages when a shipowner willfully fails to take care of the seaman's maintenance and cure requirements. *See Robinson v. Pocahontas*, 477 F.2d 1048, 1051-52 (1st Cir. 1973). This view was based predominantly upon the United States Supreme Court case of *Vaughn v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). The *Pocahontas* decision has not been overturned and is good law today. Punitive damages are still available in this circuit considering the First Circuit's interpretation of the Fifth Circuit's decision in *Guevara v. Maritime Overseas Corp*, 59 F.3d 1496 (5th Cir. 1995), cert. denied ____ U.S. ____, 116 S.Ct. 706, 133 LAWYERS EDITION 2d 662 (1996). *See C.E.H., Inc. v. F/V Seafarer*, 70 F.3d 694 (1st Cir. 1995). The *C.E.H.* case makes it clear that the First Circuit Court of Appeals' approach to punitive damages in maritime

8

cases depends on whether the claim for which the remedy is sought overlaps claims under DOSHA or the Jones Act. Since there is not a DOSHA claim here, punitive damages are still available.

The responsibility of North Star Fisheries, Inc., and its insurer to pay maintenance and cure, is clear. Since they have arbitrarily and capriciously denied the claim, and have done so in a way that clearly disregards the medical history, they must pay the legal fees associated with Mr. Hildebrandt's claim. In footnote number 4 of the *Sullivan v. Tropical Tuna, Inc.*, 963 F.Supp. 42 (1997), the note states, "a shipowner who forces a seaman to incur expenses of hiring a lawyer and filing a law suit in order to collect cure payments to which he is clearly entitled should be absolved of all liability for attorneys fees simply because he decides to pay cure before the case actually goes to trial." The defendant, vessel owner, has forced Mr. Hildebrandt to file this law suit. As such, the defendant should not only be ordered to pay for the necessary medical treatment that the plaintiff needs to reach maximum medical cure, but they should also be forced to pay for the legal fees and costs associated with the pursuit of this treatment, including the writing of this motion.

III. **CONCLUSION**

In conclusion, the plaintiff respectfully requests that this Honorable Court enter an Emergency Order that the defendant, North Star Fisheries, Inc., pay for and/or authorize the immediate payment of the plaintiff's necessary medical treatment as dictated by the plaintiff's physicians. Also, the defendant should be ordered to pay appropriate legal fees and

costs, as outlined in Plaintiff's Counsel's Breakdown of Time and Expense, hereto attached as Exhibit "R".

        Plaintiff,
        By his attorneys,

        _____
        JOSEPH M. ORLANDO, ESQ.
        BBO #380215
        BRIAN S. MCCORMICK, ESQ.
        BBO # 550533
        Orlando & Associates
        One Western Avenue
        Gloucester, MA 01930
        (978) 283-8100

## CERTIFICATE OF SERVICE

I, Joseph M. Orlando, Esq.,/Brian S. McCormick, Esq., attorneys for the plaintiff, herein, hereby certify that I served a copy of the foregoing Plaintiff's Memorandum of Law in Support of Plaintiff's Emergency Motion for an Order Requiring the Defendant To Fulfill Its Obligations Under the General Maritime Law, by mail, postage prepaid, to Robert Kiely, Esq., Regan & Kiely LLC, 85 Devonshire Street, Boston, Massachusetts 02109, on this 23rd day of July, 2004.

        _____
        JOSEPH M. ORLANDO, ESQ.
        BRIAN S. MCCORMICK, ESQ.

Cases/Hildebrandt/Bruce/PltfsMemSuportEmerMoMainOblig